Harry KAPLAN, Appellant,

v.

Marvin GREENBERG and Sandra Greenberg, Respondents.

No. 48194.

Missouri Court of Appeals, Eastern District, Division Three.

April 2, 1985.

Susman, Schermer, Rimmel & Parker, J. Leonard Schermer, Clayton, for appellant.

Stephen H. Gilmore, St. Louis, for respondents.

SIMON, Presiding Judge.

Appellant, Harry Kaplan, appeals from the judgment of the Circuit Court of St. Louis County finding that certain assets he sought to reclaim in an action seeking an injunction and accounting against his daughter and her husband, Sandra and Marvin Greenberg, respondents, rightfully belonged in part to daughter, Sandra. We dismiss the appeal.

Appellant claims exclusive right, title and interest to four assets which are the subject of this action: a Phoenix Money Market Fund valued at $38,812.59, a Dreyfus Fund account of $29,561.96, a St. Louis Federal Savings & Loan passbook account of about $100, and a 1978 Ford automobile. Daughter, Sandra, also claims an interest in these assets. We chronicle the origin of their disagreement.

Appellant and his wife, Rose, married for fifty-three years, had two daughters: Sandra, who lives in St. Louis, and Barbara, in California. Sandra and her parents maintained frequent contact on a weekly basis. Prior to her death in October 1980, Rose, because of her declining health, suggested to appellant that Sandra assist them in financial matters. Sandra's name was then added to several certificates of deposit which appellant and his wife held jointly. During his lifetime appellant had managed all his family's financial affairs unassisted and had supported his wife, two daughters, and his mother-in-law as a pharmacist. His wife never worked outside the home. Although appellant alone handled the family's finances, Sandra's husband did appellant's tax returns for the past twenty years.

After his wife's death, appellant, then seventy-nine years old, agreed Sandra would manage his financial accounts and give him the interest income from them. Under this arrangement he initially received one hundred dollars per month. Finding the amount insufficient, appellant then received two hundred, and eventually three hundred, dollars per month from the accounts managed by Sandra.

In December 1981, appellant decided to remarry. He consulted Sandra about having an antenuptial agreement prepared since she had all the financial documents and papers concerning his investments and savings. He learned that, over the course of the year following his wife's death, Sandra had changed the names several times on certificates of deposits, and had added her social security number to some. He discovered that all his funds and accounts, including title to his car, were currently held by Sandra and him as joint tenants.

Sandra explained that appellant told her he wanted Sandra's daughter to have his car; however, she acknowledged that appellant had already given $4,000 to each of her two children to buy cars the year after her mother's death. She claimed one-half of the money in the funds she held with her father was hers because in the past twenty-five years she had given her mother approximately half of the amount contained in each fund. She had paid her mother $25.00 weekly since she was eighteen years old to be saved, with the interest to be used by her parents in case of an emergency. Sandra's reason for giving her mother the money, despite evidence of the large sums of money her father had given her and her family, was her desire to avoid arguments with her own husband and family similar to those she had witnessed during her childhood over financial tensions generated by her grandmother's presence in her parents' home. She had no receipts or record of these cash payments, merely her word of

faithful payment over the years. Appellant had no knowledge of payments by Sandra to her mother. Sandra knew her father's will provided his estate be equally divided between Sandra and her sister. She also knew that by having her father's accounts in joint names with her, she would be the sole recipient of these assets upon his death.

Based on the foregoing, the trial court found that appellant and Sandra were both credible witnesses, that Sandra had contributed $25.00 per week to her mother from the time of her high school graduation until her mother's death, that these funds had been kept in joint names with Sandra and her parents to provide for the independence of her mother if needed, and that these funds were currently held in a Phoenix Money Market account and a Dreyfus Fund in the joint names of appellant and Sandra. The trial court also made the following findings:

7. That one-half of the aforesaid monies on deposit at Phoenix Money Market Account and Dreyfus Fund are the property of the defendant, Sandra Greenberg and that the interest earned on said accounts shall be for the benefit of Plaintiff, Harry Kaplan, and that said income on said accounts shall be paid by Sandra Greenberg directly to the Plaintiff, Harry Kaplan, during his lifetime for his sole benefit and use.

8. That one-half of the corpus of the said funds with Phoenix Money Market Account and Dreyfus Fund are the sole and exclusive property of the Defendant, Sandra Greenberg, but the income from the same is to be used for the benefit of Harry Kaplan during his lifetime, and Sandra Greenberg shall not invade the corpus of the funds during the lifetime of Harry Kaplan.

9. That upon the death of Sandra Greenberg, in the event that she predeceases Harry Kaplan, the aforesaid funds shall remain exclusively in her estate until the death of Harry Kaplan and during that period of time the interest on said funds shall be the property of Harry Kaplan until his death.

Based on these findings, the trial court concluded that one-half of the corpus of the funds of the Phoenix Money Market account and of the Dreyfus Fund is to be the sole property of Sandra, that Sandra is not to invade the corpus of the two funds and is to pay the entire interest income on these funds to her father and that, should she predecease her father, he would be entitled to the income from these funds, payable through her estate. The court order was silent about the St. Louis Federal Savings & Loan passbook account and title to the 1978 Ford automobile.

Although the issue was not raised by the parties, it is our duty to determine, sua sponte, if there is a final judgment, since our jurisdiction is dependent upon judgment finality. The judgment must dispose of all the issues raised. Section 512.-020 RSMo 1978. A final appealable judgment is one that disposes of all issues and all parties in the case and leaves nothing for future determination. *Erickson v. Lockhart,* 639 S.W.2d 418, 419[3] (Mo.App. 1982); *Busch v. Busch,* 618 S.W.2d 244, 245 (Mo.App.1981); *City of New Madrid v. Associated Electric Cooperative,* 582 S.W.2d 727, 729[1] (Mo.App.1979). Thus, in this action, the judgment must put to rest the disposition of the assets involved. We are concerned with the trial court's order because it fails to specify the disposition of the other half of the corpus of the Dreyfus and Phoenix Money Market accounts, as well as the disposition of the St. Louis Federal Savings & Loan passbook account and the 1978 Ford automobile.

Both parties assert in post-argument briefs furnished at our request that the order is final. Appellant states the trial court, by not mentioning the other half of the corpus of the funds, has effectively decreed that this unmentioned half of the funds remains in joint names with right of survivorship and that the car also remains in joint names with right of survivorship. Appellant adds that the monies on deposit at St. Louis Federal Savings & Loan, according to a stipulation and agreement

filed by the parties in lieu of a preliminary injunction, have been depleted by appellant who has withdrawn three hundred dollars monthly from the account, so the stipulation remains intact as the operative disposition of these monies. Likewise, he notes that the parties have considered the stipulation dispositive of the automobile. Under the stipulation, appellant regained physical possession of the Ford automobile and its title; however, Sandra has not withdrawn her name from the title, so it remains in joint names. Appellant adds a finding that the trial court order lacks finality would merely delay appellant's recourse to our court for redress of the wrongful decision concerning the Phoenix and Dreyfus accounts.

Respondent, Sandra, argues the judgment is final because: (1) appellant abandoned the issues of the car and passbook account by not including them in the argument of his brief; and (2) the disposition of the Phoenix and Dreyfus accounts do not depend in any respect on the final disposition of the car or passbook.

■ Neither appellant nor respondent has persuaded us that the judgment of the trial court operates as a final judgment. By not identifying the passbook account and car as belonging to either appellant or Sandra and by providing that one-half of the corpus of the Phoenix and Dreyfus accounts to be the sole and exclusive property of Sandra without delineating the ownership of the remaining half, the trial court failed to finally resolve the issues raised by the pleadings and has not rendered a final judgment. Further, the trial court, in its finding # 9, has apparently severed the joint tenancy, but in any event, its finding is confusing and should be clarified. Specific clarification of the ownership interest of each party in each asset is required.

Therefore, we are constrained to dismiss the appeal.

STEWART and STEPHAN, JJ., concur.